UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EXPRESS SCRIPTS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:09CV00585 ERW |
| ) | |
| MAURY COUNTY, TENNESSEE, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant's Motion to Dismiss for Improper Venue or in the Alternative for Change of Venue [doc. #21].

**I.     BACKGROUND**

Plaintiff Express Scripts, Inc. ("Plaintiff") is a pharmacy benefit manager located in St. Louis County, Missouri. In September of 2000, Plaintiff contracted with Defendant Maury County, Tennessee ("Defendant"), to manage Defendant's self-funded prescription drug program. Plaintiff's agents in St. Louis County drafted a "Managed Prescription Drug Program Agreement" ("the 2000 Agreement"), which Defendant signed in Tennessee, and then mailed to Plaintiff in Missouri. Upon receiving the 2000 Agreement from Defendant, Plaintiff also signed the document.

In 2003, Plaintiff's agents in St. Louis drafted an Agreement to renew the 2000 Agreement, effective June 1, 2003 ("the 2003 Agreement"). Again, Defendant signed the 2003 Agreement in Tennessee, and mailed it to Plaintiff in Missouri. Plaintiff then signed the 2003

Agreement, upon receiving it from Defendant in the mail. The 2003 Agreement, and particularly its indemnification provision, is at issue in this lawsuit.

On March 18, 2005, Don and Shirley Harmon filed a lawsuit in the Circuit Court for Maury County, Tennessee against Plaintiff, Defendant, and some of Defendant's employees. The lawsuit arose out of Plaintiff's disclosure of Ms. Harmon's protected health information to Defendant. Upon learning of the lawsuit, Plaintiff requested that Defendant indemnify and defend it against the charges. However, Defendant refused to provide a defense, arguing that it had no duty to indemnify because the lawsuit did not involve a benefit design or coverage decision. Plaintiff thus provided its own defense, and the Harmons' claims against Plaintiff were ultimately dismissed after Plaintiff successfully moved for summary judgment.

On April 15, 2009, Plaintiff filed the present lawsuit against Defendant in the United States District Court for the Eastern District of Missouri, asserting that Defendant breached its contractual indemnity obligations by refusing to provide Plaintiff with a defense against the Harmons' claims. On June 24, 2009, Defendant filed the pending Motion, seeking to have the Court dismiss Plaintiff's claims due to improper venue, or transfer venue to the United States District Court for the Middle District of Tennessee, under 28 U.S.C. § 1404(a).

## II. MOTION TO DISMISS FOR IMPROPER VENUE

First, Defendant seeks to have this Court dismiss Plaintiff's declaratory judgment action for improper venue. The Court has authority to do so under 28 U.S.C. § 1406(a), which provides: "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

Plaintiff asserts, and Defendant apparently does not contest, that this Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a). A federal case based on diversity jurisdiction can only be brought in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). The issue in this case is whether a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in the Eastern District of Missouri. In addressing this issue, the Court should not "ask which district among two or more potential forums is the 'best' venue, rather, [the Court should] ask whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 563 (8th Cir. 2003). Thus, with respect to this particular inquiry, any connection between the Middle District of Tennessee and the claim in this case is irrelevant.

The Court finds that the Eastern District of Missouri has a substantial connection to Plaintiff's breach of contract claim. Many of the acts that were necessary for a contract to be formed occurred in or are related to St. Louis County, which is part of the Eastern District of Missouri. For example, the initial solicitation of business to which Defendant responded and which resulted in the formation of a contract came from St. Louis County. Additionally, both the 2000 Agreement and the 2003 Agreement were drafted in St. Louis County, mailed to Defendant from St. Louis County, and ultimately signed by Plaintiff and executed in St. Louis County. In

addition to facts relevant to contract formation, events relevant to the Harmons' Tennessee state court case occurred in St. Louis County; namely Defendant contacted Plaintiff in St. Louis County and requested private health information, which Plaintiff thereafter provided. Further, after the Harmons filed their lawsuit, Defendant communicated with Plaintiff in St. Louis County regarding its refusal to indemnify, and Plaintiff felt the effects of Defendant's refusal to indemnify in St. Louis County. Together, these events and interactions substantially connect Plaintiff's claims with the Eastern District of Missouri, such that venue is proper. *See, e.g.*, *May Dep't Stores Co. v. Wilansky*, 900 F. Supp. 1154, 1163 (E.D. Mo. 1995) (finding substantial nexus when contract was prepared and executed in Missouri, contract obligations were performed in part in Missouri, and the consequences of breach were felt in Missouri); *Nordyne, Inc. v. Flick Distrib., LLC*, 2009 WL 1508778, at *3-*4 (E.D. Mo. May 28, 2009) (finding substantial connection when relevant agreements were last signed in Missouri and the defendant mailed payments to the plaintiff in Missouri).

Accordingly, Defendant's Motion to Dismiss for Improper Venue will be denied.

### III.  MOTION TO TRANSFER VENUE

Alternatively, Defendant seeks to have the Court transfer this case to the United States District Court for the Middle District of Tennessee, under 28 U.S.C. § 1404(a).

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In applying this statute, courts generally focus on three factors when deciding whether to transfer a case to another court in which venue is proper: "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice."

*See Terra Int'l Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). However, § 1404(a) places discretion in the hands of the district courts to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). Additionally, "[t]he party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991).

The Court will first consider the convenience of the parties factor. Defendant argues that, "as a political subdivision wholly located within Tennessee, [it would] be greatly inconvenienced if it is required to defend a lawsuit in Missouri," because it "conducts its business exclusively within Tennessee and it lacks any significant contacts with the [sic] Missouri." (Def.'s Mtn., doc. #22, p.7). However, Plaintiff asserts that "transfer would simply shift the inconvenience from Maury County to ESI." (Pl.'s Response, doc. #24, p.8). While the Court disagrees with Defendant's statement that it "conducts its business exclusively within Tennessee,"[1] it is true that Defendant would be somewhat inconvenienced by having to defend a lawsuit in Missouri. However, transferring this case to the Middle District of Tennessee would not cure the problem of inconvenience; rather, transferring the case would merely cause Plaintiff, whose principal place of business is in Missouri, inconvenience instead of Defendant. The Eighth Circuit has stated that "[m]erely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 696-97 (8th Cir. 1997); *see also State Auto Prop. & Cas. Ins. Co. v. Nigro Family P'ship,*

---

[1] Defendant's contract with Plaintiff, which is located in Missouri, to manage Defendant's self-funded prescription drug program demonstrates that Defendant does not conduct business exclusively within Tennessee.

5

*L.P.*, 2008 WL 4790263, at *2 (E.D. Mo. Oct. 29, 2008). Thus, the Court finds that the convenience of the parties factor is neutral, and neither weighs in favor of, nor against, transfer.

Next, the Court will consider the convenience of the witnesses. "The most important factor in passing on a motion to transfer under § 1404(a) is the convenience of the witnesses." *Am. Standard, Inc. v. Bendix Corp.*, 487 F. Supp. 254, 262 (W.D. Mo. 1980). The Court must consider "the number of potential witnesses located in or near a suggested forum," as well as "the nature and quality of their testimony in relationship to the issues of the case." *Houk v. Kimberly-Clark Corp.*, 613 F. Supp. 923, 928 (W.D. Mo. 1985). The party seeking to transfer the case has the duty to identify specific, essential witnesses and to make a general statement of what their testimony will cover. *Graff v. Qwest Commc'ns Corp.*, 33 F. Supp. 2d 1117, 1122 (D. Minn. 1999); *see also* 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3851 (3d ed. 1998) ("The party seeking the transfer must specify clearly, typically by affidavit, the key witnesses to be called and their location and must make a general statement of what their testimony will cover.").

In its Motion, Defendant identified four categories of witnesses,[2] and argues that they have essential information and should not be forced to travel a substantial distance and incur unnecessary expense in order to provide that information. The Court has reviewed the information that Defendant provided regarding these witnesses and believes that some of them are not "essential." The issue presented in this case is an issue of contract interpretation, specifically

---

[2]Defendant identified the following as persons likely to be witnesses in this case: Shirley and Don Harmon; Maury County Commissioners, including Sarah Anderson and Jerry Erwin; Malinda Stanford; and recipients of disclosures from Malinda Stanford, including Tennessee state auditors, the Federal Bureau of Investigation, and the Tennessee Bureau of Investigation.

the interpretation of the indemnification provision in the 2003 Agreement. The witnesses that will be necessary to resolve this dispute are those that have information regarding the terms of the contract, the drafting of the contract, the past practices of the parties to the contract, and other similar topics. The witnesses identified by Defendant, however, are all people who can offer information about the claims made by Shirley Harmon in the Tennessee state court case, specifically the disclosure of private health information.

The Court recognizes that, to some extent, it will be necessary to understand the issues presented in the Tennessee state court case in order to determine whether Defendant was obligated to provide Plaintiff's defense in that case. Thus, the Court will assume that Shirley Harmon is a necessary witness, in that she will provide information that is necessary "to determine whether any of the claims she asserted against ESI invoked Defendant Maury County's obligations under the indemnification provision." (Def.'s Mtn., doc. #22, p.8).[3] The Court will also assume that Maury County Commissioners Sarah Anderson and Jerry Erwin have relevant information.[4]

However, the issues presented in this case do not require an examination of the merits of the Tennessee state court case. Based on the explanations provided by Defendant, it appears that

---

[3]The Court notes that Defendant listed Don Harmon as a possible witness, but did not explain what information he has that would be relevant to this case. The Court will assume that only Ms. Harmon has relevant information.

[4]It is not clear whether the Maury County Commissioners have relevant information, because Defendant's statement that "[t]hese witnesses will be called to testify regarding the execution, performance and disclosure of records by ESI under the 2003 Agreement," is somewhat vague. It is possible to interpret this statement to mean that the Commissioners have information regarding the execution and performance of the 2003 Agreement. This would clearly be relevant.

7

some of the identified witnesses only have information that was relevant in the Tennessee state court case, and do not actually have information that is relevant to this case. For example, Malinda Stanford's testimony regarding "ESI's alleged disclosure to her and her subsequent disclosure of Shirley Harmon's protected health information" is not relevant in this contract interpretation case. (Def.'s Mtn., doc. #22, p.9). Additionally, any testimony that the recipients of Malinda Stanford's disclosures could offer regarding those disclosures would also not be relevant in this case. Without these witnesses, Defendant is left with approximately three witnesses that would have to travel to Missouri to offer their testimony in this case. Moreover, it may not even be necessary for these witnesses to travel to Missouri, as they were all deposed for the Tennessee state court case, and some testified at trial.

Plaintiff is not required to identify specific witnesses, but it is clear that Plaintiff has its own witnesses that would be burdened if this case were transferred to the Middle District of Tennessee. Many of Plaintiff's employees in St. Louis County have information that is specifically relevant to the contract interpretation issue presented in this case. As explained by Plaintiff, "the individuals who drafted, negotiated, signed, and performed the contract, all employees and former employees of ESI, reside in Missouri." (Pl.'s Response, doc. #24, p.8). Again, if the Court were to transfer this case to the Middle District of Tennessee, the inconvenience would merely shift from Defendant's witnesses to Plaintiff's witnesses. This is not an adequate reason for transferring this case, so the Court finds the convenience of witnesses factor to be neutral, neither weighing in favor of, nor against, transfer.

Finally, the Court will analyze whether the interests of justice demand transfer to the Middle District of Tennessee. In analyzing the interests of justice factor, courts examine the

following: "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." *Terra Int'l Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 696 (8th Cir. 1997). The Court will address only those factors that are relevant to this dispute.

First, a plaintiff's choice of forum is granted significant weight, *id.* at 695, thus it is important to remember that Plaintiff chose to bring this lawsuit in the Eastern District of Missouri, in close proximity to its principal place of business. The judicial economy factor weighs in Plaintiff's favor, as this Court already has a Scheduling Order and Protective Order in place, and is familiar with the claims being asserted. The issue of comparative costs was addressed in the previous two sections; this factor does not support transfer because transferring this case would merely shift the associated costs and inconvenience from one party to the other. Finally, the contract at issue specifies that Missouri law governs contract disputes, and there would likely be some advantage to having this Court interpret the law of the state in which it sits and with which the Court is familiar, as opposed to a district court in Tennessee. Thus, the interests of justice factor weighs in Plaintiff's favor, and against transferring this case to the Middle District of Tennessee.

As previously stated, in considering a motion for change of venue under 28 U.S.C. § 1404(a), a court should examine the convenience of the parties, the convenience of the witnesses, and the interests of justice. This Court has examined each of these factors, and has determined that the first two factors are neutral, and that the last factor supports keeping this case in the

9

Eastern District of Missouri. As a result, Defendant's Motion for Change of Venue will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss for Improper Venue or in the Alternative for Change of Venue [doc. #21] is **DENIED**.

Dated this 25th Day of January, 2010.

                                                E. RICHARD WEBBER
                                                UNITED STATES DISTRICT JUDGE