UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


EXPRESS SCRIPTS, INC.,         )
                                 )
      Plaintiff,            )
                                 )
     vs.                 )         Case No. 4:09CV00585 ERW
                                 )
MAURY COUNTY, TENNESSEE,    )
                                 )
      Defendant.      )


**MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiff Express Scripts, Inc.'s Motion for Partial

Judgment on the Pleadings [doc. #26], and Defendant Maury County, Tennessee's Motion for

Judgment on the Pleadings [doc. #33].

## I.    BACKGROUND[1]

On September 1, 2000, Plaintiff Express Scripts, Inc. ("Plaintiff") contracted with

Defendant Maury County, Tennessee ("Defendant") to manage Defendant's Prescription Drug

Program.  On June 1, 2003, Plaintiff and Defendant renewed their agreement, called the Managed

Prescription Drug Program Agreement.  Under the terms of the 2003 Managed Prescription Drug

Program Agreement, both Plaintiff and Defendant were permitted to disclose protected health

information for payment purposes, or for health care operations.  Moreover, in order to

effectively manage Defendant's Prescription Drug Program, it was necessary for Plaintiff and

Defendant to share information relating to individual member prescription drug information.  The

---

[1]The summary of relevant facts is based on those allegations in Plaintiff's Complaint to which Defendant has admitted.  These facts are appropriately considered undisputed.

2003 Managed Prescription Drug Program Agreement also included the following indemnification provision:

> [Defendant] will indemnify and hold [Plaintiff] harmless from and against any Costs for Claims which may be asserted against, imposed upon or incurred by [Plaintiff] and arising as a result of [Defendant]'s (i) negligent acts or omissions or willful misconduct, (ii) benefit design and coverage decisions, (iii) breach of this Agreement, or (iv) from any use [Defendant] may make of [protected health information] provided to [Defendant] by [Plaintiff].

(Pl.'s Ex.2, doc. #6, p.17, § 7.4(b)).

On March 18, 2005, Shirley and Don Harmon ("the Harmons") filed a lawsuit against Plaintiff, Defendant, and several of Defendant's employees, in the Circuit Court for Maury County, Tennessee. In that suit, the Harmons alleged, in part, that they were damaged by Plaintiff's disclosure of protected health information to Defendant in December of 2004. The protected health information at issue was related to the payment of Mrs. Harmon's Botox prescriptions. The Harmons alleged that Defendant's former budget director unlawfully published Mrs. Harmon's protected health information, including the prescription drug information provided to Defendant by Plaintiff. Pursuant to the terms of the Managed Prescription Drug Program Agreement, Plaintiff demanded that Defendant indemnify, defend, and hold harmless Plaintiff against any and all of the Harmons' claims against it. On September 8, 2005, Defendant refused Plaintiff's demand for indemnification and defense.

Plaintiff, providing its own defense in the Harmon case, filed a Motion for Summary Judgment against the Harmons, asserting, among other bases, that summary judgment was warranted because Plaintiff was contractually and legally bound to disclose Mrs. Harmon's protected health information to Defendant. The Circuit Court for Maury County, Tennessee

entered an order granting Plaintiff's Motion for Summary Judgment against the Harmons on all counts. Specifically, the court found that Plaintiff was obligated to provide protected health information to Defendant upon the request of the former budget director, and that Plaintiff therefore was not liable for any of the Harmons' claimed injuries.

On April 15, 2009, Plaintiff filed the present lawsuit against Defendant in the United States District Court for the Eastern District of Missouri, asserting that Defendant breached its contractual indemnity obligations by refusing to provide Plaintiff with a defense against the Harmons' claims. In its Answer, Defendant asserted numerous affirmative defenses. On September 17, 2009, Plaintiff filed the pending Motion for Partial Judgment on the Pleadings [doc. #26], requesting that the Court "enter judgment in favor of [Plaintiff] and against Defendant, with respect to Defendant's liability to reimburse [Plaintiff] for attorneys' fees and costs [Plaintiff] incurred in the Harmon case and for attorneys' fees and costs [Plaintiff] has incurred and continues to incur in the present case." (Pl.'s Memo. in Support of Mtn., doc. #27, p.2). After Plaintiff filed its Motion, Defendant filed its own Motion for Judgment on the Pleadings [doc. #33], in which it adopted the arguments it made in opposition to Plaintiff's Motion for Partial Judgment on the Pleadings.[2]

---

[2]Plaintiff argues that Defendant's Motion for Judgment on the Pleadings must fail, for failure to comply with Local Rule 7-4.01. The Court acknowledges that Defendant's Motion did not technically include "a memorandum in support of the motion, including any relevant argument and citations to any authorities on which the party relies," as required by the Local Rule. However, the Court is able to discern Defendant's arguments from its filings, and can dispose of them on the merits (as set forth below). Thus, the Court will not further address Plaintiff's Local Rule 7-4.01 arguments.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  In deciding a motion for judgment on the pleadings, this Court will "accept all facts pled by the nonmoving party as true and draw all reasonable inferences from the facts in favor of the nonmovant."  *Waldron v. Boeing Co.*, 388 F.3d 591, 593 (8th Cir. 2004).  This is a strict standard, as "[j]udgment on the pleadings is not properly granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law."  *United States v. Any and All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000).

## III.     DISCUSSION

The first issue that this Court must address is whether there are any material issues of fact that remain to be resolved.  If such issues of fact exist, this Court cannot grant judgment on the pleadings.  Plaintiff asserts, and Defendant apparently does not dispute, that there is no dispute regarding the material issues in this case.  The Court has examined the facts and agrees with this conclusion.  In its Answer, Defendant admitted to all of the facts that are relevant to determining whether the indemnification provision in the 2003 Managed Prescription Drug Program Agreement required Defendant to provide Plaintiff with a defense or indemnification in the Harmon case.[3]  Specifically, Defendant agreed that the Agreement was enforceable, and that the Agreement obligated it to defend and indemnify Plaintiff from claims arising from Defendant's use of protected health information.  Defendant also agreed that the Harmons' lawsuit was based, in

---

[3]These facts are set forth in the Background section.

part, on damages resulting from Plaintiff's disclosure of protected health information to Defendant, and that this disclosure was both permissible and required under the 2003 Managed Prescription Drug Program Agreement, and all applicable state and federal laws. Finally, Defendant agreed that it refused Plaintiff's request for a defense or indemnification in the Harmon case. Thus, it is clear that the Parties agree as to the material facts in this case. Judgment on the pleadings can accordingly be granted in this case if either party is entitled to judgment as a matter of law.

In order to determine if either party is entitled to judgment as a matter of law, this Court must examine Missouri law regarding indemnification agreements and contract interpretation.[4] "The rules applicable to the construction of contracts apply generally to indemnity agreements." *Union Elec. Co. v. Sw. Bell Tel. L.P.*, 378 F.3d 781, 786 (8th Cir. 2004) (citing *Chehval v. St. John's Mercy Med. Ctr.*, 958 S.W.2d 36, 38 (Mo. Ct. App. 1997)). "The cardinal rule of contract interpretation is to ascertain the parties' intention and to give effect to that intention." *Sonoma Mgmt. Co. v. Boessen*, 70 S.W.3d 475, 479 (Mo. Ct. App. 2002). "The intent of the parties is to be determined based upon the contract alone and not based on extrinsic or parol evidence unless the contract is ambiguous." *Id.* "A provision is not ambiguous merely because the parties disagree over its meaning." *Id.*

First, the Court notes that because "[t]he interpretation of a written contract is a matter of law for the court," *Union Elec. Co.*, 378 F.3d at 786, the issue of whether the indemnity provision requires Defendant to indemnify Plaintiff for the cost of defending the Harmon case is

---

[4]The 2003 Managed Prescription Drug Program Agreement provides that it "shall be construed and governed in all respects according to the laws in the State of Missouri, without regard to the rules of conflict of law thereof." (Pl.'s Ex.2, doc. #6, p.19, § 8.6).

appropriately resolved through the pending joint motions for judgment on the pleadings. Turning

now to the matter of contract interpretation, the specific contract provision at issue provides that

"[Defendant] will indemnify and hold [Plaintiff] harmless from and against any Costs for Claims

which may be asserted against, imposed upon or incurred by [Plaintiff] and arising as a result of . .

. any use [Defendant] may make of [protected health information] provided to [Defendant] by

[Plaintiff]." (Pl.'s Ex.2, doc. #6, p.17, § 7.4(b)(iv)). Thus, in this case, Defendant must indemnify

Plaintiff for the cost of defending the Harmon case if the Harmons' claims against Plaintiff arose

"as a result of" Defendant's "use" of Mrs. Harmon's protected health information. Plaintiff

argues that the Harmons' claims fall directly within the scope of that indemnification provision,

while Defendant asserts that the Harmons' claims were of a different nature than those covered by

the indemnification agreement.

Although Plaintiff and Defendant now make different arguments as to the meaning of the

indemnification provision,[5] this Court believes that the Parties' intentions as to indemnification

can be discerned from the face of the 2003 Managed Prescription Drug Program Agreement, and

that it is not necessary to rely on any extrinsic or parol evidence. The Agreement specifically

allows the Parties to share protected health information with one another, and also recognizes the

risk of litigation that accompanies the act of sharing such information. Particularly, the

Agreement contemplates that Defendant might use protected health information that it received

from Plaintiff in a manner that results in litigation against Plaintiff. In such a situation, the Parties

agreed that Defendant would be responsible for providing Plaintiff's defense or indemnification.

---

[5]As stated above, "[a] provision is not ambiguous merely because the parties disagree over its meaning." *Sonoma Mgmt. Co. v. Boessen*, 70 S.W.3d 475, 479 (Mo. Ct. App. 2002).

That is precisely the situation that is presented in this case. Defendant, by and through one of its employees, obtained information from Plaintiff regarding Mrs. Harmon's Botox prescriptions. According to the allegations in the Harmon case, Defendant's employees then disseminated that information to various people, including the Federal Bureau of Investigation and the Tennessee Bureau of Investigation, causing various damages to both Mrs. Harmon and Mr. Harmon. This was the basis of all of the claims the Harmons asserted against the various defendants, and without the actions of Defendant and its employees, there would not have been a lawsuit filed by the Harmons against Plaintiff. Thus, the Court can conclude that the Harmons' claims against Plaintiff fell within the indemnification provision of the 2003 Managed Prescription Drug Program Agreement, and Defendant acted improperly in refusing to provide Plaintiff's defense, or to indemnify Plaintiff.

Defendant makes several arguments in opposition to Plaintiff's Motion for Judgment on the Pleadings, and in support of its own Motion for Judgment on the Pleadings. Defendant's first argument is based on Missouri law, which "makes clear that 'in a private contract, where the parties stand on substantially equal footing, one may legally agree to indemnify the other against the results of the indemnitee's own negligence.'" *Nusbaum v. City of Kansas City*, 100 S.W.3d 101, 105 (Mo. 2003) (en banc) (quoting *Kansas City Power & Light Co. v. Fed. Constr. Corp.*, 351 S.W.2d 741, 745 (Mo. 1961)). However, "[a] contract of indemnity will not be construed so as to indemnify one against loss or damage resulting from his own negligent acts unless such intention is expressed in clear and unequivocal terms." *Id.* In this case, Defendant argues that the indemnification provision does not clearly and unequivocally require Defendant to indemnify Plaintiff for Plaintiff's own actions, and thus Defendant cannot be required to do so. What

Defendant fails to recognize, however, is that Plaintiff is not seeking indemnification for its own

negligence.  Plaintiff was not negligent with respect to Mrs. Harmon's protected health

information because Plaintiff was both contractually and legally required to turn Mrs. Harmon's

protected health information over to Defendant.  Because Plaintiff is not requesting that the 2003

Managed Prescription Drug Program Agreement be construed to indemnify it against damage

resulting from its own negligence, this Court need not find that the Agreement clearly and

unequivocally requires Defendant to indemnify Plaintiff for Plaintiff's own actions.

Defendant next argues that the indemnification provision does not require Defendant to

indemnify Plaintiff because the claims asserted against Plaintiff were limited to Plaintiff's own

wrongful acts; they were not based on any wrongful acts by Defendant.  Defendant quotes

extensively from the complaint in the Harmon case, in an attempt to demonstrate that the

Harmons did not mention Defendant or Defendant's employees when setting forth the three

counts they asserted against Plaintiff.  Although the Court recognizes that the Harmons did not

specifically mention Defendant or its employees in the paragraphs that immediately follow Counts

I, III, or IV of their complaint, each of those counts begins with the following phrase: "Plaintiffs

incorporate the factual averments as set forth in paragraphs 1 through 37 herein."  (Pl.'s Ex. 3,

doc. #1-1, p.8 ¶38, p.10 ¶54, p.10 ¶58).  Paragraphs 1 through 37 contain a thorough summary of

the Harmons' version of the relevant facts, which includes a description of Defendant's

employees' disclosure of Mrs. Harmon's protected health information, and the resulting damages

suffered by the Harmons.  The Harmons incorporated paragraphs 1 through 37 into each of

Counts I, III, and IV, so that they are as much a part of those counts as the paragraphs that

immediately follow.  Thus, it is inaccurate to say that the claims the Harmons asserted against

Plaintiff were not at all based on the wrongful acts of Defendant.

Finally, Defendant argues briefly that the Harmons' claims against Plaintiff did not "arise

out of" Defendant's use of protected health information provided by Plaintiff.  Defendant's

argument is flawed because the indemnification provision actually requires that the claims against

Plaintiff arise "as a result of," not "out of."  Although the language is similar, the Court cannot

rely on the authority cited by Defendant regarding the meaning of the phrase "arising out of."

(Def.'s Resp., doc. #32, p.9).[6]  However, the Court believes that even if it were to use the

meaning advocated by Defendant, specifically "originating from" or "flowing from," the outcome

would be the same.  This Court has already concluded that the actions of Defendant's employees

formed the basis of all of the claims that the Harmons asserted against the various defendants, and

that without the actions of Defendant and its employees, there would not have been a lawsuit filed

by the Harmons against Plaintiff.  Thus, the Court can properly conclude that the Harmons'

claims against Plaintiff originated and flowed from Defendant's actions.

The Court rejects the arguments made by Defendant in opposition to Plaintiff's Motion for

Judgment on the Pleadings, and in support of its own Motion for Judgment on the Pleadings.  The

Court concludes that Plaintiff is entitled to judgment in its favor on the issue of Defendant's

indemnification of Plaintiff.

Accordingly,

---

[6]Additionally, the case cited by Defendant involves an insurance contract, and the court in that case was acting under the principle that the contract should be liberally construed in favor of the insured because of disparate bargaining power. *See Cameron Mut. Ins. Co. v. Ward*, 599 S.W.2d 13, 15 (Mo. Ct. App. 1980).  This case does not involve an insurance contract and the Parties in this case are both sophisticated entities, who have equal bargaining power.

**IT IS HEREBY ORDERED** that Plaintiff Express Scripts, Inc.'s Motion for Partial Judgment on the Pleadings [doc. #26] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Maury County, Tennessee's Motion for Judgment on the Pleadings [doc. #33] is **DENIED**.

Dated this <u>22nd</u> Day of <u>March</u>, 2010.

E. RICHARD WEBBER
UNITED STATES DISTRICT COURT