UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| EXPRESS SCRIPTS, INC., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 4:09CV00585 ERW |
| MAURY COUNTY, TENNESSEE, | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiff Express Scripts, Inc.'s Motion to Strike Defendant's Seventh Affirmative Defense [doc. #47].

On April 15, 2009, Express Scripts, Inc. ("Plaintiff") filed the present lawsuit against Maury County, Tennessee ("Defendant"), asserting that Defendant breached its contractual indemnity obligations by refusing to provide Plaintiff with a defense against claims made by third parties in another lawsuit. On January 5, 2010, the Court granted Defendant's Motion to Amend Answer to Plaintiff's Complaint, and Defendant filed its First Amended Answer [doc. #45] on January 6, 2010. Defendant's First Amended Answer included various affirmative defenses, including an illegal contract defense.[1] Shortly after Defendant filed its First Amended Answer,

---

[1] Specifically, Defendant asserts: "The indemnification provision in the 2003 Managed Prescription Drug Program Agreement, which forms the basis of Plaintiff's claim, purports to require Defendant to grant public money to or in aid of a Plaintiff. The Agreement expressly provides that it is governed by Missouri law. . . . Article VI, Section 23 and Article VI, Section 25 of the Missouri Constitution, which prohibit public entities from granting public money or a thing of value to or in aid of any corporation. . . . The indemnification provision in the 2003 Managed Prescription Drug Program Agreement is an illegal contract, and thereby void and unenforceable against Defendant." (Def.'s 1st Am. Answer, doc. # 45, pp.10-11).

Plaintiff filed the pending Motion, requesting that the Court strike Defendant's seventh affirmative defense (the illegal contract defense), pursuant to Rule 12 of the Federal Rules of Civil Procedure.

Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Although a district court has "liberal discretion" with respect to granting motions to strike under Rule 12(f), the Eighth Circuit has advised that "striking a party's pleadings is an extreme measure" and such motions "are viewed with disfavor and are infrequently granted." *Standbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000) (internal quotations omitted). "A motion to strike a defense will be denied if the defense is sufficient as a matter of law or if it fairly presents a question of law or fact which the court ought to hear." *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977) (internal quotations omitted). "Motions to strike affirmative defenses should not be granted unless, as a matter of law, the defense cannot succeed under any circumstances." *Lemery v. Duroso*, 2009 WL 1684692, at *2 (E.D. Mo. June 16, 2009) (internal quotations omitted).

In this case, Plaintiff argues that Defendant's seventh affirmative defense should be stricken because it is clearly insufficient and raises no factual issues. More specifically, Plaintiff argues that "[t]he Missouri Constitutional provisions upon which Defendant relies in its Seventh Affirmative Defense are inapplicable in the case at bar. Both on their face and in judicial construction, Article VI, Sections 23 and 25 of the Missouri Constitution apply only to *Missouri* counties, cities and political corporations and subdivisions." (Pl.'s Memo. in Support of Mtn.,

doc. #48, p.4). Defendant argues that Plaintiff's argument "fails because Defendant has submitted itself to Missouri law, and Sections 23 and 25 apply to any county, regardless of its state of origin, who is subject to Missouri law." (Def.'s Opposition, doc. #51, p.1).

Article VI, Section 23 of the Missouri Constitution provides:

No county, city or other political corporation or subdivision of the state shall own or subscribe for stock in any corporation or association, or lend its credit or grant public money or thing of value to or in aid of any corporation, association or individual, except as provided in this constitution.

Article VI, Section 25 of the Missouri Constitution provides:

No county, city or other political corporation or subdivision of the state shall be authorized to lend its credit or grant public money or property to any private individual, association or corporation except as provided in Article VI, Section 23(a) and except that the general assembly may authorize . . . .

The language that is important in this case appears in both of these sections: "[n]o county, city or other political corporation or subdivision of the state . . . ." The Parties dispute the meaning of this phrase. Plaintiff argues that the language limits the applicability of each section to public entities of the State of Missouri, while Defendant argues that the "of the state" only modifies "other subdivision," and does not modify "county, city or other political corporation." Thus, Defendant asserts that Sections 23 and 25 apply to it, a county in the State of Tennessee. Defendant's argument is based on the "last antecedent doctrine," which provides that "words, phrases and clauses are applied to the word or phrase immediately preceding, not to others more remote." *Parker v. Green*, 340 S.W.2d 435, 440 (Mo. Ct. App. 1960).

The Court recognizes the last antecedent doctrine and the effect the doctrine would have if applied in this case. However, the Court must also consider that doctrines of statutory construction should not be utilized when such utilization will create "an absurd result." *Demko v.*

3

*United States*, 216 F.3d 1049, 1053 (Fed. Cir. 2000) (citing *Squillacote v. United States*, 747 F.2d 432, 433-34 (7th Cir. 1984) (suggesting that the doctrine of the last antecedent is inapplicable when it creates absurd or otherwise conflicting results)); *see also Porto Rico Ry., Light & Power Co. v. Mor*, 253 U.S. 345, 348 (1920) ("When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all."); *Elrod v. Treasurer of Mo. as Custodian of The Second Injury Fund*, 138 S.W.3d 714, 716 (Mo. 2004) ("This Court 'use[s] rules of statutory construction that subserve rather than subvert legislative intent. In addition, we will not construe the statute so as to work unreasonable, oppressive, or absurd results.'" (quoting *Kincade v. Treasurer of the State of Mo.*, 92 S.W.3d 310, 311 (Mo. Ct. App. 2002) (alteration in original)). In this case, Defendant's use of the last antecedent doctrine to interpret Article VI, Sections 23 and 25 of the Missouri Constitution to apply to the counties, cities, and political corporations of other states creates an absurd result.

Defendant's interpretation of the Missouri Constitution would violate the very notion of state sovereignty, as established by the Tenth Amendment to the United States Constitution. Specifically, if Sections 23 and 25 of the *Missouri* Constitution were interpreted to apply to Maury County, *Tennessee*, the State of Missouri would effectively be legislating for the State of Tennessee. This type of indirect legislation is strictly prohibited. *See U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 861 (1995) ("Because powers are reserved to the States 'respectively,' it is clear that no State may legislate for another State: Even though the Arkansas Legislature enjoys the reserved power to pass a minimum-wage law for Arkansas, it has no power to pass a minimum-wage law for Vermont."); *Bonaparte v. Tax Court*, 104 U.S. 592 (1881) ("No State

4

can legislate except with reference to its own jurisdiction."). Because the State of Missouri has no authority to regulate the business of Tennessee counties, Defendant's interpretation, regardless of its utilization of rules of statutory construction, creates an absurd result. The Court must read Article VI, Sections 23 and 25 of the Missouri Constitution to apply only to Missouri cities, Missouri counties, Missouri political corporations, and subdivisions of the State of Missouri.

Defendant argues that because the 2003 Managed Prescription Drug Program Agreement contains a Missouri choice of law provision, Maury County, Tennessee has "submitted itself to Missouri law." (Def.'s Opposition, doc. #51, p.1). The choice of law provision to which Defendant refers provides: "This Agreement shall be construed and governed in all respects according to the laws in the State of Missouri, without regard to the rules of conflicts of laws thereof." (Agreement, doc. #6, p.19). Defendant's argument must fail because the choice of law provision does not extend as far as Defendant alleges. The provision specifically deals with how the 2003 Managed Prescription Drug Program Agreement is to be governed and construed, but it does not encompass every claim that could possibly be related to the Agreement. *See Inacom Corp. v. Sears, Roebuck & Co.*, 254 F.3d 683, 687-88 (8th Cir. 2001) ("The narrow contractual language that the [contract] is to be governed and construed by Illinois law simply does not address the entirety of the parties' relationship."). The issue presently before the Court involves the ability of the Parties to enter into a contract in the first place; this is not an issue of how their ultimate Agreement should be construed or governed.

Moreover, even if this Court were to conclude that Defendant has submitted itself to Missouri law such that Article VI, Sections 23 and 25 of the Missouri Constitution is applicable, Defendant's illegal contract affirmative defense would still fail. This is because Sections 23 and

5

25 do not prohibit Missouri counties and cities from entering into contracts like the one at issue in this case; rather, these sections only prohibit counties and cities from: owning stock in a corporation or association; lending credit to a corporation, association or individual; and granting public money or property to aid a corporation, association or individual.  Mo. Const. art. VI, §§ 23, 25.  Defendant's affirmative defense is based on the third prohibition, as its Amended Answer alleges that "the 2003 Managed Prescription Drug Program Agreement, which forms the basis of Plaintiff's claim, purports to require Defendant to grant public money to or in aid of a Plaintiff." (Def.'s 1st Am. Answer, doc. #45, p.11).  However, the Agreement at issue does not require Defendant to grant public money to Plaintiff, rather it requires the payment of money (including sums for indemnification) in exchange for services.  The term "grant" is equivalent to "give away," and cannot be used to describe situations in which parties negotiate at arms' length to receive or provide services in exchange for money.  *See St. Charles City-County Library Dist. v. St. Charles Library Bldg. Corp.*, 627 S.W.2d 64, 69-70 (Mo. Ct. App. 1981) ("The term 'grant,' as used in the cited constitutional sections, has been treated by the Supreme Court of Missouri as synonymous with 'give away.'").  Thus, the Agreement at issue in this case does not violate Article VI, Sections 23 and 25 of the Missouri Constitution.

Finally, the Court must briefly address Defendant's argument that Plaintiff's Motion to Strike was not filed in a timely manner.  Defendant asserts that "a motion to strike a pleading must be filed within 20 days of the date the pleading was filed.  In the present case, Defendant's Amended Answer, with the Seventh Affirmative Defense, was filed on January 6, [2010].  However, Plaintiff did not filed its Motion to Strike until January 27, 2010 . . . ."  (Def.'s Opposition, doc. #51, p.7).  Defendant's argument fails because it misstates the applicable law.

As set forth above, Federal Rule of Civil Procedure 12(f) establishes that a motion to strike may be "made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Plaintiff's Motion to Strike, which was filed on January 27, 2010, was filed exactly 21 days after Defendant filed its First Amended Answer. Thus, Plaintiff's Motion was timely filed.

Based on the preceding discussion, the Court concludes that Defendant's illegal contract affirmative defense presents no questions of fact, and is wholly insufficient. The affirmative defense cannot succeed under any circumstances, so the Court will grant Plaintiff's Motion to Strike.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Express Scripts, Inc.'s Motion to Strike Defendant's Seventh Affirmative Defense [doc. #47] is **GRANTED**.

Dated this <u>6th</u> Day of <u>May</u>, 2010.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT COURT